STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION |
|---|---|
| Hinesburg Hannaford CU Approval; | Docket No. 129-9-12 Vtec |
| Hinesburg Hannaford SP Approval; | Docket No. 163-11-12 Vtec |
| Hinesburg Hannaford Subdivision Revision | Docket No. 68-5-14 Vtec |
| Aubuchon (FH Plaza) SP Revision Application | Docket No. 69-5-14 Vtec |
| Automotion SP Revision Application | Docket No. 70-5-14 Vtec |
| Hinesburg Hannaford Wetland Determination | Docket No. 73-5-14 Vtec |
| Hinesburg Hannaford Act 250 Permit | Docket No. 113-8-14 Vtec |
| Hinesburg Hannaford Water Quality Certification | Docket No. 114-8-14 Vtec |

**Decision on Motions to Strike and Motions for Entry of Judgment and/or Remand**

The matter before the Court relates to a proposed 36,000 square foot Hannaford grocery store and pharmacy with associated parking on Lot 15 of the Commerce Park subdivision (the Project) in the Town of Hinesburg, Vermont (the Town). Martin's Foods of South Burlington, LLC (Applicant) is the project developer. This development proposal requires multiple state and local use permits and decisions. There are eight coordinated appeals pending before the Court involving five municipal decisions, two decisions of the Agency of Natural Resources related to wetlands and water quality, and a State Act 250 Land Use Permit. The Court has already decided more than a half dozen motions related to these coordinated

appeals, the matter is set for trial, and the parties have begun to submit pre-filed testimony. This decision addresses four new motions filed by a group of interested persons: Catherine Goldsmith; James Goldsmith; Jean Kiedaisch; John Kiedaisch; Chuck Reiss; Sally Reiss; Lindsay Hay; Brian Bock; Natacha Liuzzi; Mary Beth Bowman; Wendelin Patterson; Bethany Ladimer; Kate Schubart; Michael Sorce; Dark Star Properties, LLC; and Responsible Growth Hinesburg, an association of Hinesburg residents (collectively, Appellants). Two of the motions seek to strike portions of the pre-filed testimony of a number of Applicant's witnesses as well as portions of some of Applicant's exhibits. The other two motions, relying in part upon the motions to strike, ask for judgment in Appellants favor or, in the alternative, for remand to the bodies appealed from.

Applicant is represented by Christopher D. Roy, Esq.; Appellants are represented by James A. Dumont, Esq.; the Vermont Agency of Natural Resources is represented by Leslie A. Welts, Esq. and Elizabeth Lord, Esq.; the Vermont Natural Resources Board is represented by Peter J. Gill, Esq.; and the Town is represented by Ernest M. Allen, III, Esq.

## I. Motions to Strike

Appellants have filed two motions seeking to strike certain portions of the pre-filed testimony of Applicant's witnesses Robert Bast, Michael Willard, Paul O'Leary, David White, Adam Crary, and Jeffrey Nelson. The objections fall into two general categories. First, for each witness, Appellants object to any testimony regarding the content, meaning, interpretation, or application of the legal standards governing the various appeals before the Court. Second, Appellants object on hearsay grounds to reference to or discussion of the decisions appealed from in these de novo appeals. We address these general categories first and then specifically consider each witness's testimony.

### i. Testimony as to legal standards and ultimate issues to be decided by the Court

Many of Appellants' objections to Applicant's pre-filed testimony relate to Applicant's expert witnesses' testimony regarding the local and state regulatory standards applicable in reviewing the Project and the opinions of the experts explaining why, in their opinion, the project satisfies the requirements. Appellants argue that Applicant's witnesses may not testify as to the requirements or interpretation of a statute or ordinance. Appellants also assert that

2

testimony as to whether a project satisfies a legal standard should be treated the same as testimony describing the legal standard itself. Applicant responds that all of its pre-filed testimony is relevant in these proceedings and is not otherwise inadmissible, and that Appellants' objections go to the weight of the evidence and not its admissibility.

Vermont Rule of Evidence 704 states that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The Reporter's Notes to Rule 704 state that "[t]he purpose of the rule is to avoid arbitrary line drawing between 'ultimate' and lesser issues that would inhibit the natural presentation of testimony which Rules 701 and 702 are intended to secure." Thus, testimony that is "otherwise [a] helpful expression of opinion" should not be excluded simply because it coincides with an issue to be decided by the Court. Reporter's Notes, V.R.E. 704 (citing Cadel v. Sherburne Corp., 139 Vt. 134, 137 (1980); State v. Norton, 134 Vt. 100, 102–04 (1976)). Notwithstanding this inclusionary rule, testimony that gives nothing more than a bare assertion of an ultimate legal conclusion is inadmissible as it provides no helpful information to the fact finder. See V.R.E. 701, 702; see also Riess v. A.O. Smith Corp., 150 Vt. 527, 530–31 (1988). "On the other hand, where the question involves an ultimate issue, but is not phrased in terminology carrying a precise legal definition that may be at variance with the common meaning of the terms, the decisions allow it." Riess, 150 Vt. at 532.

Related to the prohibition of opinions on the "ultimate issue" is the prohibition on witnesses testifying as to what the law is. "As a general rule, a witness may not give his opinion on questions of law for the determination of such questions is exclusively within the province of the court." Town of Brighton v. Griffin, 148 Vt. 264, 271 (1987) (internal citation omitted) (citing Holton Estate v. Ellis, 114 Vt. 471, 476 (1946)). In Brighton, the Vermont Supreme Court upheld the trial court's exclusion of testimony of a State employee as to the meaning of provisions of Title 24 of the Vermont Statutes and the Brighton zoning ordinance.

Both of these classes of testimony—opinions on the ultimate issue and on questions of law—are not relevant or helpful to the Court as they provide no information to assist the decision maker, but rather infringe on the Court's obligation to determine what the law is, both

generally and with regard to specific questions before the Court. The complained-of testimony here, however, does not fall into either category.

For example, the testimony of Robert Bast, a registered architect who designed the Project building, discusses the provisions of the Hinesburg Zoning Regulations (Zoning Regulations or Regulations) that he considered in designing the Project and explains why, in his opinion, the Project complies with the Regulations he considered. His testimony relative to compliance with Act 250 Criterion 8 is also structured around the analysis known as the "Quechee test." Mr. Bast testifies as to his understanding of the elements of the Quechee test in order to testify as to his opinions on whether the Project will have an undue adverse effect on the character of the area. Mr. Bast's testimony does not present to the Court what he believes the Quechee test or the Regulations to mean, but rather states the regulatory provisions he considered in designing the Project and in rendering his opinion on the Project design. Thus, while it is not helpful to hear an expert witness offered for his architectural expertise recite the meaning of Act 250 Criterion 8, it is equally unhelpful to draw an arbitrary line that says the witness can make no mention of the regulations he considered in designing the project, especially since the regulations provide context and structure for his testimony. Mr. Bast's testimony relates to the aesthetic character of the Project and the surrounding areas and what he took into consideration in designing the Project. The references in his testimony to the regulations do not change this. If Appellants believe Applicant's witness designed or reviewed the Project based on the wrong standards and therefore the Project does not conform to the governing regulations, Appellants will have ample opportunity to explore those topics through cross-examination.

ii.      Testimony regarding the decisions appealed from.

Appellants also object to Applicant's witnesses' testimony regarding the proceedings below on grounds that such testimony is inadmissible hearsay and is irrelevant in these de novo proceedings. Appellants' objection is unavailing. The decisions of the municipal panel, Act 250 District Commission, or of the Agency of Natural Resources are not being offered for the truth of what is asserted in the decisions. Rather, they provide background information on the history of the processes appealed from. The Court gives no deference to and is not bound by

4

the decisions appealed from, but rather considers the appeals anew. This review process does not make the entirety of the decisions below irrelevant. Nor does it prohibit a witness who was involved in proceedings below from testifying as to the application presented below, changes from that application to what is now presented in these de novo proceedings, or even the substance of the decisions themselves.

Furthermore, even where a decision is hearsay, this Court is permitted to exercise discretion and admit evidence otherwise inadmissible where "it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." V.R.E.C.P. 2(e)(1). The documents submitted as part of the proceedings below, testimony relative to what happened at those proceedings, and stray references to the decision appealed from in the testimony of Applicant's expert witnesses will not be excluded. The decisions provide helpful background and context for the proceedings and tend to show how the Project design has been altered in response to criticisms. The prior decisions and testimony about them are admissible for this purpose.

      iii.     <u>Specific objections to the testimony of certain witnesses</u>

          *a. Robert Bast*

Appellants' motion to strike the testimony of Applicant's architect, Robert Bast, is generally resolved by the discussion above. The Court has reviewed his testimony and finds that his references to the zoning regulations and to Act 250 Criterion 8 are not offered to tell the Court what those standards mean or even that they apply to the Project, but only that they are what Mr. Bast considered in designing the project. References to those standards are necessary context for his opinions. Appellants argue that Mr. Bast may have an incorrect assessment of what the standards mean, and therefore, he should not be allowed to testify that the Project complies. Such concerns are more appropriate for cross-examination and are not grounds to strike testimony. Additionally, Appellants argue that Mr. Bast is not qualified to testify as to the content or meaning of the "Quechee test," as he has not read the <u>Quechee Lakes</u> decision and has no specialized knowledge on applying the test. This argument fundamentally misses the point of Mr. Bast's testimony. Mr. Bast does not testify as to what the test is, where it came from, or even how the Court should apply it. He only uses its very

common framework to structure his otherwise helpful and admissible opinions. The motion to strike the testimony of Robert Bast is therefore **DENIED**.

Appellants also object to Exhibit 26, a memorandum prepared by Mr. Bast summarizing the ideas generated during a public meeting on the Project design, on hearsay grounds. The memorandum, however, is not being offered for the truth of the matter but for its effect on Mr. Bast as he worked on the Project design. The motion to strike Exhibit 26 is **DENIED**.

### b. Michael Willard

Michael Willard is Applicant's landscape architect who prepared or provided oversight for the landscaping and lighting plan, sheet L1 of Hannaford Exhibit 4. Appellants again object to Mr. Willard testifying that the Project landscaping complies with the Landscaping Plan & Standards provision in the Hinesburg Zoning Regulations. See Hinesburg, Vt., Zoning Regulations § 4.3.8 (2014). It is helpful to the Court to have Mr. Willard testify as to what landscaping elements are proposed for the Project and how, in his opinion, those elements satisfy the requirements of the Regulations. While the ultimate issue of compliance must be determined by the Court, Mr. Willard's testimony does not provide grounds for objection simply because it embraces this ultimate issue. V.R.E. 704. Testimony as to compliance, with nothing more, would be unhelpful. But, where the witness fully describes how and why he formed his opinion that the Project complies with the regulations, the testimony provides the Court with useful information and will not be excluded.

Appellants also move to strike Mr. Willard's testimony related to Act 250 Criterion 8 for the same reasons they object to Mr. Bast's testimony, and the Court denies the motion for the same reasons. The motion to strike the testimony of Mr. Willard is **DENIED**. If Appellants disagree with the opinions of Mr. Willard or the methodology he used in forming those opinions, they will have an opportunity to challenge the opinions through cross-examination.

### c. Paul O'Leary

Appellants' first objection to the testimony of Mr. O'Leary relates to the use of a neighboring property as part of the Project's stormwater management system. This issue has been withdrawn by the Appellants as Applicant has altered the stormwater plan to eliminate this issue.

Appellants also move to strike essentially all of Mr. O'Leary's testimony on the grounds that his "opinions and conclusions are irrelevant and lack necessary foundation because his Hydrocad modeling relies upon use of Town of Hinesburg property for placement of 300 feet of drainage pipe – but Hannaford possesses no agreement with or deed from the Town allowing this use of its land, and no such agreement or deed can be provided in the future." (Mot. to Strike at 16, filed Jun. 11, 2015). The fact that Applicant may need future authorization for construction of part of the stormwater management system does not mean the Court cannot review, consider, deny, or grant approval conditioned on that future authorization. The Court addressed a similar argument made by Appellants in its March 4, 2015 decision. Appellants contend that, based on their interpretation of the governing statute, 19 V.S.A. § 1111, Applicant cannot obtain approval for the use of the Town highway to install the drainage pipe. First, as discussed below in Section IV, the Court disagrees with Appellants' reading of section 1111. But more importantly, even if it were impossible for Applicant to obtain permission for its necessary stormwater pipe under section 1111, that does not in any way prevent this Court from making the legal determination that the Project as proposed either does or does not comply with State and municipal regulations, and it certainly does not make the otherwise admissible testimony of Applicant's engineer inadmissible.

The remaining objections to Mr. O'Leary's testimony fall into the general categories discussed above. Mr. O'Leary's testimony as to what regulations he believes govern review of the Project are not admitted for the truth of the matter, but rather to establish what he considered in designing and reviewing the project and to structure his testimony. His references to the proceedings below are likewise provided to add context, describe the effect of those proceedings on the project design, and to structure his testimony. The motion to strike the testimony of Mr. O'Leary is **DENIED**.

### d. David White

Appellants first move to strike the entirety of Mr. White's testimony because he will be paid a contingency fee for his testimony based on the outcome of the case. This argument is unsupported by the facts offered by Appellants. In his deposition, which was provided in support of this motion to strike, Mr. White testified that he has been and will continue to be

paid hourly for his work. His associate, Mr. Burke, who assisted with locating and purchasing the subject property, will be paid a brokerage when all permits are received and the appeal time concluded, and another when the store opens. This is not, as Appellants argue, Mr. White being paid to testify in court on a contingency basis. Furthermore, Mr. White's opinions are based on plans and reports he created over his many years working on this project, and the Court sees no risk that his testimony will in any way be influenced by the brokerage fee to be paid to his partner, and therefore, no reason to exclude his testimony on this basis. If Appellants wish to cross-examine Mr. White regarding his compensation and any changes to his opinions relative to the Project, they are free to do so at trial.

The majority of Appellants' remaining objections to Mr. White's testimony fall into the categories already discussed. Mr. White's opinions provide context, background, and structure to his otherwise admissible testimony regarding the Project design.

Appellants also argue that Mr. White is not qualified to testify regarding the adequacy of the stormwater system, traffic safety issues, or visual aesthetic impacts of the project, as insufficient foundation has been laid for his qualifications as an expert regarding these issues. Mr. White has over thirty years of experience in real estate development in Vermont, including experience as a city planner and as a project manager. His work includes overseeing architects, engineers, landscape architects, traffic experts and the like. He has played a significant role in the design of this Project as it relates to the very issues Appellants argue he is unqualified to testify about. Appellants' arguments go to the weight and not the admissibility of Mr. White's testimony. Applicant has met the burden of establishing sufficient experience, education, and personal knowledge of the Project plans to qualify Mr. White to testify regarding all elements of the Project design.

Appellants further object to Mr. White's testimony regarding visual simulations created using a program called "PepperChrome." They argue that Applicant has not laid sufficient foundation because Mr. White does not know if the person who created the simulations is a landscape architect, is unaware of the person's credentials, and has only spoken with the person over the telephone. Mr. White's testimony does establish that the PepperChrome simulations are based on actual photographs of the site (which he took) and computer-aided

8

drafting (CAD) plans of the proposed development (with which he is familiar). The result, he testifies, is a highly accurate representation of what the developed lot will look like. Sufficient foundation has been laid for admission of the PepperChrome simulations and Mr. White's testimony regarding them. The motion to strike Mr. White's testimony is **DENIED** in full.

### e. Adam Crary

Appellants object to certain testimony of Adam Crary, a senior wetland scientist, regarding the Project's impacts on wetlands. Appellants again object that Mr. Crary cannot testify as to the State and federal legal standards that govern classification and protection of or development within a wetland. Here again, his testimony as to what regulatory provisions he considered is helpful to structure his otherwise admissible testimony, and is therefore not objectionable. See V.R.E. 704. Appellants also object to his testimony about the hydrogeological function of wetlands as he is a wetlands biologist. Mr. Crary has, however, established sufficient experience and education to qualify him to testify regarding the functions of wetlands, including hydrogeological functions. Appellants will have an opportunity to cross-examine Mr. Crary regarding his conclusions as to those functions and the basis for those conclusions.

Appellants also object to testimony regarding permits issued by and correspondence from the Vermont Agency of Natural Resources and the United States Army Corps of Engineers. These documents and Mr. Crary's testimony are admissible to establish the history of the regulatory proceedings and how Applicant responded to the correspondence. Such permits and related agency correspondence are commonly relied upon by developers and interested parties and they are therefore admitted. The motion to strike Mr. Crary's testimony is therefore **DENIED**.

### f. Jeffrey Nelson

Appellants object to the testimony of Mr. Jeffrey Nelson, a hydrologist and hydrogeologist who testified regarding the stormwater treatment and management system and other water-related impacts of the Project. Appellants move to strike all of Mr. Nelson's pre-filed testimony on the same grounds on which they objected to Mr. O'Leary's testimony: because the stormwater management system relies on the use of an as yet unapproved pipe

along the Town highway, the Project cannot be approved. For the reasons describe above, the motion to strike is **DENIED**. The remaining motions to strike Mr. Nelson's testimony also overlap with the objections discussed above and are also **DENIED** for the same reasons.

II.     **Motion for Judgment Regarding Parking**

Appellants have moved for judgment in their favor based on the facts presented in Applicant's pre-filed testimony pursuant to Vermont Rules of Civil Procedure 52 and/or 56. Appellants argue that because the Project proposes parking in the front yard in violation of the Regulations, the application should be denied. Applicant asserts that there is no parking proposed in the front yard, and therefore, Appellants are not entitled to judgment.

The applicable provision of the Regulations states:

> "Parking and loading areas for any new structures shall be located in the side or rear yards of the structure. Where sufficient screening is provided, and with Development Review Board approval, up to 20% of the total number of parking spaces may be located in the front yard of the structure."

Hinesburg, Vt., Zoning Regulations § 5.6.3 (2014). The Regulations define "Yard, Front" as "[a] yard on the same lot with a principal building, extending the full width of the lot and situated between the centerline of the street or right-of-way and the front line of the building extending to the side lines of the lot." Id. § 10.1. Here, the lot is bordered to the southeast and east by Mechanicville Road. Northerly access is provided by way of a right-of-way to Commerce Street. Apart from the access road, the lot does not border on Commerce Street; rather, there are several properties and existing structures that separate the lot from Commerce Street. The northern side of the lot nearest to Commerce Street is not the front yard. Thus, based on the evidence thus far presented, the area between the building and the lot line bordering Mechanicsville Road would be the "front yard."

While some confusion is created by the reference to the "front line of the building" in the definition of "Yard, Front," the Court understands section 5.6.3 to be intended to prohibit large parking areas between a building and a travelled roadway. Thus, whichever side of the building faces the roadway is considered the "front line of the building" for the purposes of defining the front yard. To hold otherwise would lead to an absurd result. Appellants argue the common understanding of the "front" of a building would be the side providing access to the

building and having signage.  Where, as here, the regulations prohibit locating parking in the "front yard," it makes little sense to locate the building entrance on a different side of the building than the parking.  Where the parking is located on the opposite side of the building from the travelled road way, the entrance can be located on the same side without converting that side into the "front yard."  Thus, based on the plain language of the Regulations and the evidence before the Court, Appellants are not entitled to judgment regarding compliance with the parking regulations. The motion is **DENIED**.

III.     **Motion for Judgment on Act 250 Criteria 8 and 9(K) and Act 250 Rule 34(E)**

Appellants have also moved for judgment in their favor on Act 250 Criteria 8 and 9(K), arguing that if their motions to strike are granted, Applicant would fail to meet its burden of production as to those criteria. As the motions to strike are denied, and as Applicant has submitted significant testimonial and documentary evidence to the Court thus far, the motion for judgment is **DENIED**.

Appellants also argue that Applicant has failed to provide any testimony relative to Act 250 Rule 34(E), also known as the Stowe Club Highlands test, and they are entitled to judgment as a matter of law on that issue.  Rule 34(E) prohibits the amendment of an Act 250 permit condition that was critical to the issuance of the initial permit where the Court determines that finality of that condition outweighs any flexibility in the permitting process.  Applicant argues that, based on the language of the prior Act 250 permit and the Project description, the Court could conclude that the Project does not seek to amend any permit condition that was critical to issuance of the permit and therefore Rule 34(E) does not apply.  Based on Applicant's assertions, the Court cannot conclude at this time that Appellants are entitled to judgment on the Rule 34(E) issue.  The motion is **DENIED**.

IV.     **Motion to Dismiss the Application for Failure to have the Town as a Co-Applicant**

Appellants move to dismiss the appeal because the Town did not sign the Act 250 or municipal applications and has not appeared as a co-applicant.

The Court's understanding at this preliminary stage is that the Town is not the owner of involved land; it rather owns a right-of-way. Furthermore, Applicant does not need an easement or property interest for the proposed stormwater pipe, but rather a permit to use the

highway pursuant to 19 V.S.A. § 1111(c). Subsection 1111(c) authorizes town selectboards to issue permits for the installation of "pipes and wires" under town highways. Subsection 1111(d) authorizes the State Agency of Transportation to issue permits for private "sewer or water lines" in public highways. Appellants' primary contention is that the stormwater pipe is a "sewer line," see 24 V.S.A. § 3501 (defining "sewage"), and that, because subsection (d) gives the State Agency of Transportation the right to issue a permit for sewer lines but makes no reference to municipal approval for sewer lines, a municipality cannot grant approval for a stormwater pipe. This interpretation ignores the plain "pipes and wires" language of subsection (c)—language that is broad enough to encompass sewer lines—and would lead to irrational results. If the Court were to accept Appellants' interpretation of the statute, no private party in the State of Vermont could obtain permission to place a culvert or other stormwater conveyance within a municipality-owned right-of-way. This runs contrary to common sense and longstanding practice, and we therefore reject this interpretation.

Thus, Applicant does not need any property interest in the Town-owned right-of-way, but rather only a permit to place a drainage pipe. Further, as the Town is not the owner of involved land, it need not have signed the application or be a co-applicant. For all the reasons discussed above, the Court retains jurisdiction to hear the Act 250, municipal, and State permit appeals now before the Court. If Applicant needs additional permits or approvals, those proceedings are beyond the scope of the Court's current reviews. The motion to dismiss is therefore **DENIED**.

**V. Motion for Judgment Regarding Conditional Use Review**

The proposed grocery store is a permitted use within the commercial district where it is located. It does not, therefore, need to go through conditional use review. The grocery store must, however, comply with the prescribed hours of operation for commercial or industrial uses within the commercial district. Section 4.3.6 of the Zoning Regulations states that "[n]o commercial or industrial use shall operate outside the hours of 6:00 a.m. to 10:00 p.m. without the conditional use approval of the Development Review Board." Applicant seeks approval for interior cleaning and re-stocking work outside of the hours of 6:00 a.m. to 10:00 p.m. Appellants argue that the entire project must meet all conditional use criteria, and review is not

limited to the issue of whether the additional hours of operation alone are allowed. The Court disagrees.

Section 4.3.6 allows the Development Review Board to allow a commercial use to operate outside the stated hours, provided the applicant can satisfy the Board that certain adverse impacts will not result from the extended hours. Nowhere does section 4.3.6 indicate that the otherwise permitted use shall be treated as a conditional use because the use will operate until 10:30 p.m. instead of 10:00 p.m. To the extent this section can be read to mean what Appellants' suggest, the regulation is ambiguous and we are directed by law to resolve all ambiguities in favor of the landowner. In re Weeks, 167 Vt. 551, 555 (1998) (citations omitted). As Applicant has provided testimony relative to approval for the extended hours, Appellants' motion for judgment on that issue is **DENIED**.

### Conclusion

Appellants' two motions to strike are **DENIED**. Based on the testimony and documentary evidence presented to the Court thus far, the Court cannot say that Appellants are entitled to judgment as a matter of law on any issue raised in this appeal. The two motions for judgment and/or remand are **DENIED**.

**ON SEPTEMBER 9 PARTIES FILED A LETTER EXPRESSING THE INTENT TO FILE ADDITIONAL MOTIONS TO STRIKE CERTAIN PRE-FILED TESTIMONY AND RESPONSES THERETO. THE COURT ENCOURAGES THE PARTIES TO CONSIDER THE ABOVE DECISION AND EXCERSIZE RESTRAINT WITH RESPECT TO THE FILING OF ADDITIONAL PRE-TRIAL MOTIONS.**

**Electronically signed on September 16, 2015 at 12:09 PM pursuant to V.R.E.F. 7(d).**

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division